### EATON et al. v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 10991.

Circuit Court of Appeals, Fifth Circuit.

July 11, 1944.

Walter E. Travers, of West Palm Beach, Fla., for petitioners.

Howard P. Locke, Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Rollin H. Transue, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

The Tax Court affirmed the Commissioner's disallowance of a deduction of $27,770, claimed for the year 1937, because stock in Smith & Wyman Company became worthless in that year. Petitioners are here insisting that the Commissioner and the Tax Court, as they did in the Miami Beach Bay Shore Co. case, 5 Cir., 136 F.2d 408, have viewed the taxpayer's claim with a gaze too blurred by intense preoccupation with the fact that the company had been long moribund to see the value picture as a whole. They say in short that this is another of those stock loss deduction cases in which the value shrinkage occurring in earlier years has loomed so large that it has caused a denial of the statutory right to take the deduction when and only when the last value has disappeared.

We agree with petitioners. The Tax Court did make a finding that the value of the assets of the company was in 1936 and 1937 less than its indebtedness. But it is quite plain that this finding is directly in the face of all the evidence as to

the value of the physical properties of the company. It is clear, too, from a reading of the findings and the opinion as a whole that the conclusion that the stock had become worthless before 1937 was based not on a finding of no equity in the physical properties as properties, but on the Tax Court's view that all prospects of reviving the business as a going concern had before 1937 disappeared. We cannot say that the finding of the Tax Court that before 1937 it had become apparent that the company would not be revived is without support in the evidence. We think it quite clear, however, that this finding is not at all determinative of the question at issue here as to when the stock became worthless. For while the company was without value as a going concern, it did have physical assets of substantial value, and every witness who appraised them valued them in excess of the indebtedness. The Minneapolis City Assessor valued the properties for tax purposes at $84,790. Other witnesses valued the lands and buildings at over $100,000. No one put a less value on them, and the debts did not exceed $50,000. As we pointed out in the Miami Beach case, supra, the question for determination is not whether the stock had prior to the tax year lost the greater part of its value. As long as it has any value, either present or potential, the taxpayer may not claim a deduction on account of its value shrinkage. By the same token the government may not deprive the taxpayer of its right to make the claim in the year when the last value has disappeared. Here until the bank refused to renew, remanded payment of its debt, and under the threat of foreclosure secured a conveyance of the property, there was not only hope, there was prospect that the company, and, therefore, the stockholders would realize something out of its physical properties. Until that identifiable event, the demand of the bank for immediate payment of the indebtedness, occurred, no one could have positively declared that the stock had become worthless. It is common experience that real estate is subject to great fluctuation in value according to the ebb and flow of demand, and that, unless its appraised or appraisable value is less than the debt, the equity in mortgaged property may be realized. Even after foreclosure is determined upon but not accepted or agreed to, a new loan may be obtained and the chances to work the equity out preserved. If, in 1936 or any earlier year, the taxpayers had attempted to claim a deduction as for total loss of the value of this stock, the commissioner could very properly have denied it on the ground that as long as the bank was carrying and renewing the mortgage, and not pressing foreclosure, the physical properties being what they were, no identifiable event had occurred marking the stock a total loss. When the taxpayer, confronted at last with a firm demand for foreclosure, determined to give up the fight and surrender the property, then, but not until then, occurred the identifiable event on which a claim for loss could be based. The judgment of the Tax Court was wrong. It is reversed and the cause is remanded to it with directions to allow the deduction.